IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FISHER SAND AND GRAVEL COMPANY, a Michigan Corporation § § § § Plaintiff, § § v. § Case No: 20-cv-_____ § CENTRAL STATES, SOUTHEAST § AND SOUTHWEST AREAS PENSION § Hon. Thomas L. Ludington FUND § § and § § CHARLES A. WHOBREY, GEORGE J. § WESTLEY, GARY DUNHAM, TREVOR § LAWRENCE, GARY F. CALDWELL, § and ROBERT WHITAKER, § in their Capacity as Trustees, and, § THOMAS C. NYHAN, in his Capacity as § Executive Director, of the Central States, § Southeast and Southwest Areas Pension Fund § § Defendants, § § and § § GENERAL TEAMSTERS LOCAL UNION § NO. 406 § § Required Party. § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

MASUD LABOR LAW GROUP
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

## I.   NATURE OF THE CASE

Fisher Sand and Gravel Company ("Fisher" or the "Company"), by and through the undersigned attorneys, brings this action to obtain a judgment declaring that Fisher terminated its contractual obligation to contribute to the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"). For relevant purposes, Fisher's contractual obligation to contribute to the Fund stemmed from a 2015-2018 collective bargaining agreement (the "2015 CBA") between Fisher and the General Teamsters Local Union No. 406 (the "Union"). After the 2015 CBA was terminated, Fisher and the Union entered into a one-year collective bargaining agreement, which covered terms and conditions of employment for 2018-2019 (the "2018 CBA"). The 2018 CBA was terminated in mid-2019, and Fisher and the Union thereafter engaged in good faith collective bargaining negotiations.

In August 2020, Fisher and the Union executed a new CBA with a term of 2020-2022 (the "2020 CBA"). The 2020 CBA terminated Fisher's obligation to make pension contributions to the Fund. Despite receiving a copy of the fully executed 2020 CBA, and the 2018 CBA having been terminated, the Fund contends that Fisher must continue to make pension contributions to the Fund. Contrary to Supreme Court precedent[1], the Fund asserts the right to enforce the 2018 CBA

---

[1] *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441-42 (2015) (stating that contractual obligations in a bargaining agreement ordinarily end upon termination of agreement).

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

beyond its termination. The Fund's stance is untenable because it ignores the fact that the 2018 CBA was terminated in accordance with its terms and, thus, lacks future force or effect. In making demand for future contributions based on its erroneous position, the Fund places Fisher at risk of liability for past and future contributions.

## II. PARTIES

1. Fisher is an employer within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* Fisher maintains its headquarters at 3701 Contractor Drive, Midland, Michigan.

2. Central States, Southeast and Southwest Areas Pension Fund is a multiemployer pension plan within the meaning of ERISA §§ 3(2), (3), and (37), 29 U.S.C. §§ 1002(2), (3), and (37). The Fund maintains its headquarters in Des Plaines, Illinois.

3. Charles H. Whobrey, George J. Westley, Gary Dunham, Trevor Lawrence, Gary F. Caldwell, and Robert Whitaker are the Trustees of the Fund. Thomas C. Nyhan is the Executive Director of the Fund.

4. General Teamsters Local Union No. 406 is a labor organization within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and an employee organization within the meaning of ERISA, 29 U.S.C. §

MASUD LABOR LAW GROUP
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

1001 *et seq*. Its headquarters are located in Saginaw, Michigan. The Union is joined as a required party under Fed. R. Civ. P. 19.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331; Section 301 of the LMRA, 29 U.S.C. § 185; and Sections 502(e)(1) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(e)(1) and 1451(a)(1). The Court is authorized to enter declaratory relief pursuant to 28 U.S.C. § 2201.

6. Venue is proper in the Eastern District of Michigan under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Fund may be found in this district through its administration of benefits to participants located in this district and its receipt of contributions from employers located in this district. Simply stated, the Fund conducts business within the State of Michigan and this district.

7. Venue is also proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this action are substantially connected to this district. Specifically, the operations of Fisher giving rise to any claimed obligation to contribute to the Fund substantially occurred in this district, the contributions claimed to be owed would be paid from this district, and the facts giving rise to the Fund's claim that future contributions are owed substantially occurred in this district, including the negotiation, execution, and performance of the bargaining agreement giving rise to this dispute.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

## IV. BACKGROUND

8. In 2015, Fisher and the Union entered into a collective bargaining agreement with an effective date of June 1, 2015 (the "2015 CBA"). A true and correct copy of the 2015 CBA is attached as Exhibit 1.

9. Article 17 of the 2015 CBA provided that Fisher would make contributions to the Fund for "each employee covered by the [2015 CBA] who is on the regular seniority list" unless otherwise specified.

10. The duration of the 2015 CBA is addressed in Article 38. Section 1 of Article 38 provides that the 2015 CBA shall be "in full force and effect from June 1, 2015, to and including May 31, 2018, and shall continue in full force and effect year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration."

11. Section 3 of Article 38 further provides that in the event notice of termination of the 2015 CBA is provided less than sixty days prior to the 2015 CBA's termination date or automatic renewal date, then "the expiration date of this Agreement shall be the sixty-first (61st) day following such notice."

12. On March 2, 2018, Fisher, through its counsel, provided notice of contract termination to the Union terminating the 2015 CBA. Fisher, through its counsel, also filed with the Federal Mediation and Conciliation Service, and the

Michigan Department of Licensing & Regulatory Affairs, Bureau of Employment Relations, a Notice to Mediation Agencies confirming that the 2015 CBA had been terminated. A true and correct copy of the foregoing correspondence is attached as Exhibit 2.

13. Thereafter, Fisher and the Union entered a memorandum of understanding, which extended the 2015 CBA for a period of one year (with some modification thereto). The memorandum of understanding was executed by Fisher and the Union in the summer of 2018 and set terms and conditions of employment through May 31, 2019. Hereinafter, the memorandum of understanding, as incorporated by reference with the 2015 CBA, is referred to as the 2018 CBA. The 2018 CBA is attached as Exhibit 3.

14. On April 30, 2019, Fisher, through its counsel, provided notice to the Union of its intent to terminate the 2018 CBA. Fisher, through its counsel, also filed with the Federal Mediation and Conciliation Service, and the Michigan Department of Licensing & Regulatory Affairs, Bureau of Employment Relations, a Notice to Mediation Agencies. A true and correct copy of the foregoing correspondence is attached as Exhibit 4.

15. On July 15, 2020, a new collective bargaining agreement became effective between Fisher and the Union (the "2020 CBA"). The 2020 CBA

MASUD LABOR LAW GROUP
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

terminated Fisher's obligations to the Fund. A true and correct copy of the 2020 CBA is attached as Exhibit 5.

16. On August 5, 2020, Fisher, through its counsel, notified the Fund by letter that Fisher and the Union had ratified the 2020 CBA and that the 2020 CBA terminated Fisher's obligation to make contributions to the Fund. Fisher's letter included a copy of the section from the 2020 CBA eliminating Fisher's obligation to make contributions to the Fund. A true and correct copy of Fisher's August 5, 2020, letter to the Fund is attached as Exhibit 6.

17. On September 15, 2020, Fisher through its counsel, notified the Fund by letter that Fisher and the Union had executed the 2020 CBA. Fisher's letter informed the Fund that the execution of the 2020 CBA ended Fisher's obligation to contribute to the Fund. A true and correct copy of Fisher's September 15, 2020, letter is attached as Exhibit 7.

18. Fisher's correspondence to the Fund regarding the ratification and execution of the 2020 CBA comports with the requirements set forth in the Trust Agreement for Central States, Southeast and Southwest Areas Pension Fund, as Amended through April 1, 2016 (the "Fund Trust Agreement"). The Trust Agreement provides in Article III, Section 1 that an employer's obligation to make contributions to the Fund "shall continue . . . after termination of the collective bargaining agreement until the date the Fund receives from the Employer . . . a

7

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

collective bargaining agreement signed by both the Employer and the Union that eliminates the duty to contribute to the Fund . . . ." Fisher provided the Fund with a copy of the 2020 CBA via its September 15, 2020, letter.

19. On October 7, 2020, the Fund responded by letter to Fisher's correspondence. A true and correct copy of the Fund's October 7, 2020, letter is attached as Exhibit 8.

20. In its October 7, 2020, letter, the Fund does not agree that Fisher's obligation to make contributions has ceased. The Fund basis its position on three arguments. First, it asserts that the 2018 CBA requires Fisher to make contributions through at least May 31, 2023. Second, it asserts that the 2020 CBA could not eliminate Fisher's duty to contribute to the Fund without the Fund's consent. Third, it contends that third-party beneficiary law supports its position that Fisher's obligation to contribute to the Fund could not be changed by Fisher and the Union without the Fund's consent.

21. Each of the Fund's arguments claiming that Fisher must continue to make contributions through at least May 31, 2023, is incorrect and unsustainable. First, its claim that the 2018 CBA imposes an obligation on Fisher to contribute to the Fund through at least May 31, 2023 fails because the 2018 CBA was properly

MASUD LABOR LAW GROUP
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

terminated.[2] As such, the 2018 CBA cannot obligate Fisher to make future contributions to the Fund.[3]

22. The Fund's second argument—that the 2020 CBA could not eliminate Fisher's duty to contribute to the Fund without the Fund's consent—fails for similar reasons. The Fund basis its argument on Article III, Section 7(a) of the Trust Agreement. By its own terms, however, and in accordance with established law, Fisher's obligation to abide by the Fund's Trust Agreement ceased once the 2018 CBA expired and the 2020 CBA took effect.

23. Finally, the Fund is incorrect in its contention that it holds third-party beneficiary rights under common law that prevented Fisher and the Union from eliminating Fisher's obligation to contribute to the Fund without the Fund's consent. Again, the 2018 CBA was terminated and expired. Accordingly, Fisher and the Union had the unfettered right to negotiate a new collective bargaining agreement that eliminated any obligation on the part of Fisher to continue to contribute to the Fund.

---

[2] Alternatively, the 2018 CBA expired by its own terms in 2019, as it was, on its face, an agreement of one year in duration only, or was later terminated by the parties upon its stated expiration.

[3] This Court has previously held that a collective bargaining agreement includes related memorandum of understanding and that such memorandum of understanding are incorporated into and made part of a bargaining agreement. *See Bauer v. Cnty. of Saginaw*, 111 F. Supp. 767, 780-81 (E.D. Mich. 2015).

9

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

## COUNT I:  DECLARATORY JUDGMENT

24. Fisher repeats and incorporates by reference the allegations of paragraphs 1-23 of the Complaint as if set forth fully herein.

25. Fisher brings this claim for declaratory judgment under Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202.

26. By its October 7, 2020, letter, the Fund has demanded past and future contributions from Fisher and asserted that Fisher is obligated to contribute to the Fund until at least May 31, 2023.  The Fund's demands and assertions expose Fisher to, among other things, coercive action by the Fund under Section 301 of the LMRA, 29 U.S.C. § 185 and/or Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145.

27. The Fund has asserted that it has the authority to require continued contributions to the Fund by Fisher despite the fact that (a) the only sources of any such obligation, the 2015 CBA and the 2018 CBA, had been terminated, (b) the 2020 CBA negotiated and agreed to by Fisher and the Union does not require contributions, and (c) the Fund has been notified of the foregoing in accordance with the Trust Agreement.

28. Section 515 of ERISA, 29 U.S.C. § 1145, requires an employer to contribute to a multiemployer pension fund pursuant to the provisions of an applicable collective bargaining agreement or multiemployer plan.

**MASUD LABOR LAW GROUP**
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

29.     Contrary to the position of the Fund, Fisher does not interpret the 2018 CBA as requiring it to make past of future contributions to the Fund because the agreement has been properly terminated.

30.     The direct parties to a collective bargaining agreement have the right to determine the terms and meaning of their agreement, so long as the parties comply with applicable labor laws in the negotiation of that agreement.  Where the direct parties to a collective bargaining agreement agree that the agreement does not require contributions to a multiemployer pension fund, that fund cannot impose its own view on the parties' right to determine their agreement.

31.     To the extent that the Fund is demanding that Fisher make contributions to the Fund after the 2020 CBA was submitted to the Fund, which contributions are governed by the terms of the CBA, Fisher is entitled under 29 U.S.C. § 185, and/or under the common law of ERISA, to a judicial interpretation of its collective bargaining obligations to contribute or not to the Fund, and a declaration that it is not in breach of its collective bargaining obligations with respect to such contributions.

32.     The Fund has demanded that Fisher acknowledge that it owes future contributions to the Fund; such demand exposes Fisher to contribution claims and delinquent contribution penalties and assessments if it does not acquiesce to the demand.

MASUD LABOR LAW GROUP
4449 Fashion Square Boulevard, Suite 1 | Saginaw, Michigan 48603 | p (989) 792-4499 | f (989) 792-7725 | www.masudlaborlaw.com

33. An actual and justiciable controversy exists between the parties which the Court can resolve with finality by declaring the parties' rights.

**WHEREFORE**, Fisher demands judgment in its favor and requests the following relief:

(a) A declaratory judgment in its favor that it is no longer required to contribute to the Fund; and

(b) An award of reasonable attorneys' fees and costs;

Respectfully submitted,

/s/Joshua J. Leadford
David John Masud (P37219)
dmasud@masudlaborlawgroup.com
Joshua J. Leadford (P75335)
jleadford@masudlaborlawgroup.com
MASUD LABOR LAW GROUP
4449 Fashion Square Boulevard
Suite 1
Saginaw, Michigan 48603
989.792.4499 (telephone)
989.792.7725 (facsimile)

*Attorneys for Plaintiff*
*Fisher Sand and Gravel Company*